UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v.  CR. No. 11-058 ML

EVGUENI TETIOUKHINE

MEMORANDUM AND ORDER

This matter is before the Court on Evgueni Tetioukhine's ("Defendant") motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

I. Background

On April 13, 2011, a federal grand jury indicted Defendant on one count of wire fraud in violation of 18 U.S.C. § 1343; one count of social security fraud in violation of 42 U.S.C. § 408(a)(7)(B); one count of making a false statement in a passport application in violation of 18 U.S.C. § 1542; one count of making a false statement in a student loan application in violation of 20 U.S.C. § 1097(a); one count of making a false statement in a residential loan application in violation of 18 U.S.C. § 1001; and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. A trial by jury commenced on September 19, 2011. At the close of the government's case, Defendant moved for a judgment of acquittal on all counts, which the Court took under advisement. Defendant renewed the Rule 29 motion at the end of Defendant's presentation of evidence and again before final argument. Those motions were also taken under

1

advisement by the Court. At the conclusion of trial, the jury returned a verdict of guilty on all counts.[1]

## II. Standard of Review

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the Court "on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In considering a defendant's motion for acquittal, the Court must determine "whether any rational factfinder could have found that the evidence presented at trial, together with all reasonable inferences, viewed in the light most favorable to the government, established each element of the particular offense beyond a reasonable doubt." United States v. Pomales-Lebron, 513 F.3d 262, 267 (1st Cir. 2008) (internal quotation marks and citation omitted). Where, as here, the Court reserves it decision at the time the motion is made, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). The Court first considers Defendant's motion made at the end of the government's case.

## III. Government's Evidence at Trial

The evidence, taken in the light most favorable to the government, establishes that Fionghal S. MacEoghan ("Fionghal S. MacEoghan" or "MacEoghan") was born at the Loughlinstown hospital in Dun Laoghaire, Ireland in 1969. MacEoghan has lived in Ireland for the majority of his life. For a short period of time, however, in the early 1980s, he lived in

---

[1] Subsequent to the jury's verdict, the government moved to dismiss Count 7 of the indictment. Count 7 charged Defendant with aggravated identity theft in the making of a passport application. The Court granted that motion on November 23, 2011.

Englewood, California with his parents, Laurence McCoon,[2] a United States citizen, and Rosamond DeCoursey Ireland. MacEoghan has dual United States and Irish citizenship. In or about 1979-1980, MacEoghan was assigned the social security number xxx-xx-0131[3] and he obtained a United States passport.

Defendant, a citizen of the U.S.S.R., entered the United States pursuant to a valid visitor visa on June 14, 1991. Defendant's passport listed his year of birth as 1971. Defendant was authorized to remain in the United States until October 30, 1991; he, however, did not depart the United States.

On or about October 31, 1991, the State of Rhode Island issued a Rhode Island identification card to Defendant in the name of Fionghal S. MacEoghan. The identification card listed 1969 as his year of birth and a Providence, Rhode Island address. In order to obtain the Rhode Island identification card, Defendant needed to show proof of identity. Defendant produced a birth certificate or birth document, a social security card, and proof of address. On or about February 6, 1992, the State of Rhode Island issued a driver's license to Defendant in the name of Fionghal S. MacEoghan. The license identified 1969 as his year of birth. The license was subsequently renewed.

On or about February 9, 1992, Defendant completed an application for a replacement

---

[2]At some point Mr. McCoon changed his last name to MacEoghan. Mr. McCoon also used the names Albert Finley MacEoghan, Albert Finley McCoon, and Laurence Albert McCoon.

[3]For privacy purposes, the Court has redacted MacEoghan's social security number and has not provided the month and day of his birth. For purposes of this decision, however, the reader is informed that in all instances where Defendant purportedly provided "his" social security number and "his" year of birth as 1969, Defendant used MacEoghan's social security number and his month, day and year of birth.

social security card in the name of Fionghal S. MacEoghan. In that application, Defendant asserted that he was born in 1969 in Loughlinstown, Ireland; that he was a United States citizen; and that his father's name was Laurence Albert McCoon. In response to the requirement "[e]nter the Social Security number previously assigned[,]" Defendant answered "xxx-xx-0131." Exhibit 25-R at 10. In addition, in response to the question "[e]nter the name as shown on the most recent Social Security card issued[,]" Defendant answered "Fionghal S. MacEoghan." Id. As a result of Defendant's submission of this application, a replacement social security card was issued to him with social security number xxx-xx-0131.

On or about January 22, 1993, Defendant applied for a United States passport in the name of Fionghal S. MacEoghan. In the application, Defendant indicated that he was born in 1969 in Loughlinstown, Ireland, and that his father's name was Laurence McCoon and his mother's maiden name was Sarah Ireland. Defendant also indicated that his social security number was xxx-xx-0131. Defendant noted that he had previously been issued a passport and that he had "misplaced" it "as a child." Exhibit 13-AR at 4. In support of the application, Defendant submitted a United States Department of State certification of birth listing a year of birth as 1969 and a place of birth as Loughlinstown, Ireland. As a result of Defendant's submission of the application, a United States passport was issued to him.

On or about January 17, 2002, Defendant, identifying himself as Fionghal S. MacEoghan, completed an application to renew his passport by mail. As part of the application, Defendant submitted the passport issued in 1993. On the application, Defendant again indicated that he was born in 1969 in Loughlinstown, Ireland, and that his social security number was xxx-xx-0131.

As a result of Defendant's submission of the application, a new passport was issued to him.

On or about February 21, 2007, Defendant, in the name of Fionghal S. MacEoghan, executed a Uniform Residential Loan Application. In the application, Defendant indicated that he was a United States citizen; he was born in 1969; and his social security number was xxx-xx-0131. A representative from Salem Five Bank, the bank that processed the application, testified that the information in the application was initially collected in a Rhode Island sales office. On or about January 29, 2007,[4] the application was electronically transmitted from Rhode Island to the Salem Five corporate offices in Salem, Massachusetts. The loan was subsequently approved in the amount of $260,000.

On or about January 15, 2009, Defendant, again identifying himself as Fionghal S. MacEoghan, completed a Free Application for Federal Student Aid. In that application Defendant stated that he was a United States Citizen, that he was born in 1969, and this his social security number was xxx-xx-0131. On or about January 21, 2009, Defendant, once again identifying himself as Fionghal S. MacEoghan, completed a Federal Stafford Loan Master Promissory Note application. In that application, Defendant indicated that he was born in 1969 and that his social security number was xxx-xx-0131. Defendant, using the name Fionghal S. MacEoghan, received $14,756.84 in federally subsidized student loans.

After conducting a search of his own name on Facebook and on other internet sources, MacEoghan contacted the Warwick, Rhode Island police department, from Ireland, and reported

---

[4]The representative testified that the application information would have been electronically transferred to Salem Five's corporate offices in Salem, Massachusetts before the application was executed on February 21, 2007, by Defendant.

that "somebody had been using [his] identity fraudulently in the United States." September 19, 2011, Transcript at 81.

## IV. Analysis

After the jury returned its verdict and pursuant to Defendant's Rule 29 motion, the Court directed the parties to provide briefing on § 1028A. The Court requested that the parties focus their research on the "real person" element of the offense, i.e., that Defendant must have known that the means of identification he was using belonged to a real person. See Flores-Figueroa v. United States, 556 U.S. 646, 129 S. Ct. 1886, 173 L. Ed. 2d 853 (2009). Because aggravated identify theft requires the commission of an underlying predicate felony offense, the Court begins its Rule 29 analysis with the predicate offenses of social security fraud and wire fraud.

### A. Social Security Fraud; 42 U.S.C. § 408(a)(7)(B)

To establish that Defendant committed social security fraud in violation of 42 U.S.C. § 408(a)(7)(B), the government must prove beyond a reasonable doubt that (1) Defendant used a false social security number or one which was not assigned to him, (2) for any purpose and, (3) with the intent to deceive. See United States v. Doe, 878 F.2d 1546 (1st Cir. 1989) (construing precursor provision, 42 U.S.C. § 408(g)(2)); see also United States v. Harris, 376 F.3d 1282 (11th Cir. 2004). A reasonable jury could find that Defendant used MacEoghan's social security number for the purpose of obtaining a mortgage loan. See United States v. Cabrera, 426 F. App'x 204 (4th Cir. 2011) (defendant who applied for a loan using another individual's name and social security number committed social security fraud). Thus, the evidence, viewed in the light most favorable to the government, reveals that Defendant, with the intent to deceive, falsely represented that the social security number xxx-xx-0131 was assigned to him when, in fact, it

was assigned to MacEoghan. Consequently, a reasonable jury could have convicted Defendant of committing social security fraud in violation of 42 U.S.C. § 408(a)(7)(B).

### B. Wire Fraud; U.S.C. § 1343

To establish that Defendant committed wire fraud in violation of 18 U.S.C. § 1343, the government must show (1) a scheme to defraud by means of false pretenses, (2) Defendant's knowing and willful participation in the scheme with the intent to defraud, and (3) the use of interstate wire communication in furtherance of the scheme. United States v. Cassiere, 4 F.3d 1006 (1st Cir. 1993). A reasonable jury could find that Defendant willfully used another individual's name, date of birth, and social security number in applying for a mortgage loan. Additionally, a reasonable jury could also conclude that in processing that mortgage loan application Salem Five bank electronically transferred the application information in interstate commerce in January of 2007. Thus, a reasonable jury could have convicted Defendant of committing wire fraud in violation of 18 U.S.C. § 1343.

### C. Aggravated Identify Theft; 18 U.S.C. § 1028A

To establish aggravated identify theft the government must prove "1) the knowing transfer, possession, or use, without lawful authority, of a means of identification of another person, 2) in relation to a felony violation enumerated in subsection (c) of § 18 U.S.C. § 1028A," here, wire fraud and social security fraud. United States v. Stepanian, 570 F.3d 51, 59 (1st Cir. 2009). Section 1028A also requires that the government show that the "defendant knew that the means of identification at issue belonged to another person." Flores-Figueroa, 129 S. Ct. at 1895. That knowledge may be proven by circumstantial evidence. United States v. Nunez-Polanco, 428 F. App'x 13 (1st Cir. 2011).

A reasonable jury could have concluded that Defendant committed the predicate crimes in the two separate counts of aggravated identify theft. Likewise, a reasonable jury could have concluded that Defendant knowingly used another individual's name and social security number without lawful authority during the commission of those crimes. See 18 U.S.C. § 1028(d)(7) ("means of identification" in statutory scheme includes name and social security number). The parties contest, however, whether a reasonable jury could have concluded that Defendant knew that the means of identification he used belonged to another person.

Although the government did not present direct evidence that Defendant knew that the means of identification belonged to another real person, a reasonable jury could have drawn that inference from circumstantial evidence that was introduced in the government's case in chief. See Nunez-Polanco, 428 F. App'x 13. Defendant applied for a replacement social security card in MacEoghan's name and knew many details of his life. MacEoghan testified that his father had obtained a social security number on his behalf when they lived in California. In the application for the replacement social security card, Defendant stated that he had *previously* been issued the social security number xxx-xx-0131. In addition, in that application, Defendant also listed MacEoghan's year and place of birth, albeit misidentifying the name of the hospital where MacEoghan was born as a city or town in Ireland. Defendant also identified McCoon as MacEoghan's father. See generally United States v. Martins, 325 F. App'x 7, 8 (1st Cir. 2009) (evidence that defendant had the social security card of individual and knew "many specific details" of individual's life sufficient evidence to maintain conviction for aggravated identify theft).

In addition, a reasonable jury could have inferred that Defendant knew that MacEoghan

had been issued a passport when he was a child. In the application for a replacement passport, Defendant used MacEoghan's social security number, date and place of birth and parents' names. Moreover, Defendant stated that he had "misplaced" his previously issued passport "as a child." Exhibit 13-AR at 4. Consequently, a rational factfinder could have concluded that not only was Defendant aware that MacEoghan had been issued a passport but that he was also aware that MacEoghan was issued the passport when he was a child. Accordingly, a rational factfinder could have found that Defendant's knowledge that MacEoghan had been issued the social security number xxx-xx-0131 and had been issued a passport, in addition to knowing other intimate details of MacEoghan's life, together with all reasonable inferences, viewed in the light most favorable to the government, established that Defendant knew the means of identification that he was using belonged to a real person.

In this case, a reasonable juror could have also considered that Defendant was aware that the means of identification that he was using belonged to a real person because Defendant *repeatedly* subjected the information to government scrutiny. This is particularly significant in this case because of the nature of the documents sought, i.e., a social security card and a United States passport. It is difficult to contemplate any government-issued document that would be subjected to greater scrutiny than these two "gold standard" identification documents. See generally United States v. Holmes, 595 F.3d 1255, 1258 (11th Cir. 2010) (reasonable jury could "have found that [defendant's] willingness to subject the social security card repeatedly to government scrutiny established that [he] knew, all along, that the social security card belonged to a real person"); see also Nunez-Polanco, 428 F. App'x at 15 (a factor, among others, allowing jury to infer that defendant knew that means of identification belonged to a real person was that

defendant informed undercover officers that there would be no problem obtaining credit cards with the identification documents "suggesting that they . . . would stand up to . . . <u>government scrutiny</u>") (emphasis added).[5]

### D. False Statement in a Passport Application; 18 U.S.C. § 1542

To establish that Defendant made a false statement in a passport application in violation of 18 U.S.C. § 1542, the government must prove beyond a reasonable doubt that (1) Defendant knowingly made a false statement on a United States passport application, (2) with intent to secure the issuance of a passport. <u>United States v. Salinas</u>, 373 F.3d 161 (1st Cir. 2004). The evidence taken in the light most favorable to the government shows that Defendant, in making a passport application, used MacEoghan's name and social security number as his own. "[P]assport fraud is complete at the moment an applicant makes a knowingly false statement in an application with a view toward procuring a passport." <u>Salinas</u>, 373 F.3d at 165. As a result, a reasonable jury could have convicted Defendant of a violation of 18 U.S.C. § 1542.

### E. False Statement in Student Loan Application 20 U.S.C. § 1097(a); False Statement in Residential Loan Application 18 U.S.C. § 1001

The Court concludes that the government introduced sufficient evidence and that a rational factfinder could have found that Defendant committed each of the essential elements of making a false statement in a student loan application in violation of 20 U.S.C. § 1097 and making a false statement in a residential loan application in violation of 18 U.S.C. § 1001.

### V. Conclusion

For the reasons stated herein, Defendant's motion for judgment of acquittal is denied.

---

[5]The Court does not express any opinion with respect to whether repeated government scrutiny *alone* is sufficient to support the "real person" requirement of aggravated identify theft.

Likewise, Defendant's motions for judgment of acquittal made at the end of Defendant's presentation of evidence and before final arguments are denied for the same reasons.

SO ORDERED.

/s/ Mary M. Lisi
Mary M. Lisi
Chief United States District Judge
November 28, 2011.